Our third case of the morning is Tagami v. Chicago. Mr. Flaxman. May it please the court. This case is about a public protest on public property on a matter of public concern. Sonoku Tagami participated in a protest against the City of Chicago's public indecency law. That law bars women, but not men, from appearing in public with an uncovered chest. Ms. Tagami sought to express her disagreement with the law. Ms. Flaxman, hi. Hi Judge, how are you? Could you talk to us about why you think the city has to present evidence to justify the restriction on exposed female breasts? Given the extent to which prior cases have accepted a municipality's interest in protecting a citizen from, let's say, unwilling exposure to this part of the female body, why can't this be resolved on the pleadings? The case that I think you're asking about would be a general challenge to public indecency laws, period. The plaintiff in this case is not seeking a right to be nude in public, full stop. What the application of the law the plaintiff contends has to be justified is to her on the day that she was protesting. So the general justification that supports public indecency laws is not being challenged. Because there is this expressive conduct as part of a protest, there is a harder lift for the city to justify it under the First Amendment.  If we conclude, whether on the pleadings now or on a more developed record later, that the city has a legitimate interest in protecting unwilling viewers from exposure to the naked female breast, then is that the end of Ms. Tagami's First Amendment claim? Or might she still have an argument that the city can accommodate a go-topless protest activity at certain times and places? She would still have an argument that if the court on a further record or on the pleadings were to find that there was a sufficient substantial interest, the next question would be whether there's a connection between enforcing the law against Ms. Tagami and that substantial interest. And that's where we want to develop facts about whether the law is enforced, about whether the law covers contemporary dress by having this strange language about below the upper edge of the areola. And it's also where we want to develop factual records about the laws that protect the right to breastfeed. And so that's where we would say that even accepting there is this substantial interest, there's no connection to furthering that interest because of these other facts that we want to develop and evidence that we want to show to disprove the furtherance aspect of that interest. Do you want me to return to the question about remedy? I'm not entirely sure I understood your answer to Judge Rovner. Are you attempting to make an argument that there was unequal enforcement of this ordinance? That is, it has been enforced differentially against people who are engaged in forms of protest? The evidence that we want to develop is that... The answer to my question is yes or no, and then you can expand. The answer is yes, that we want to develop that the enforcement of the law is unequal and that... I didn't see that argument in your brief. What have I missed? That was the principal thing I looked for in your brief. I could certainly understand an argument to say Chicago enforces this ordinance only when people are protesting. But when a woman wears a risque gown to the Lyric Opera of Chicago, the ordinance is not enforced because there's no politics involved there. I just didn't see that argument in your brief. Well, that exact argument I don't think is one we articulated. I think it is one that may arise as we develop the facts about whether the statute is enforced. If you want a case reversed for some reason, you have to make the argument in your brief. Have I missed something in your brief? So we have not made an argument about enforcement against First Amendment activity versus non-expressive conduct. The argument that we have made, which is, I believe, related to that and maybe even nearly the same, is that the ordinance itself bans contemporary fashions and... Yeah, well, that may be stupid, but there's a huge category of stupid but constitutional ordinances. Well, I think it's harder for those stupid but constitutional arguments to survive when they're being challenged under the First Amendment. The other argument that we've made about enforcement is that we have evidence from newspaper articles, we haven't been able to develop this factual record, that other protests that involve nudity have not seen enforcement of this ordinance. That wouldn't get at the kind of argument I was concerned about. To show there's only partial enforcement, even during protests, is not to say that the city is discriminating against protesters. I understand. So the way that I will contend that we have come close to the argument you're raising is that by saying that the law bars contemporary fashions and we are saying that it's not enforced against those contemporary fashions, that we believe the evidence is going to show that a great number of women wearing swimsuits on Chicago beaches are in violation of the text of this ordinance, and I don't believe we're going to find any tickets against those women. Well, this gets to the question I was raising about the issue of remedy. I understood your suit to seek a facial remedy declaring this part of the city's indecent exposures ordinance unconstitutional. You're not seeking an as-applied remedy that it's just invalid and unenforceable as applied to protest-related conduct of this sort. The complaint invoked both requests for relief. We are not contending now that we have a right to an injunction against the ordinance. Mr. Grommey doesn't have standing to seek an injunction barring enforcement of the ordinance. But you are seeking a declaration that this part of this ordinance is facially unconstitutional. As a prerequisite to receiving damages for violation of a First Amendment right, I believe the plaintiff's entitled to it. But you're not limiting your argument to the protest context. Under the First Amendment, we are, but you're right. There's a broader challenge under the Equal Protection Clause that the unequal treatment of women under the ordinance violates the Equal Protection Clause and is not limited to First Amendment protests to expressive conduct. Some of you are seeking a facial remedy. Am I right that the court thus far held that a restriction on exposed female but not male breasts violates the Equal Protection Clause? Was the question whether another court has held that? I'm sorry. Yeah. The closest I believe is a case out of the appeals court in New York that interpreted New York's public indecency statute to avoid that constitutional problem. The city cites a large number of cases that have addressed somewhat similar challenges. We distinguish those based on a lot of them involved secondary effects. A lot of them involved a developed factual record. And I think they didn't involve the same kind of arguments about enforcement and about the breastfeeding laws that we are seeking to raise in this case. To return to the question about a declaration, that that would be a precursor to receiving damages for a violation of the Equal Protection Clause. I don't believe she has a right to an injunction saying the statute or the ordinance is unconstitutional. But if she's going to prove that she's entitled to damages for the violation of her rights, that would involve a finding that the application of the law to her is unconstitutional. So she's not seeking a right to do this again in the future? A declaration that the law is invalid and she has a right to do this in the future? So we don't contend that she has standing to seek that. That on the record we've presented on the facts today, she doesn't have a plane ticket to come back to Chicago and protest again. So we don't have a right to that and we're not seeking it. Judge Rovner, did you have another question? Were you talking about Busetti earlier? That New York case?  And I don't want to say that that case adopted the argument that plaintiff is putting forward on the equal protection. My understanding, my recollection of the case is that to avoid a constitutional problem, it adopted an interpretation of New York's law that allowed women to appear topless in New York streets. Since my light is up, I'll ask to reserve the balance of my time. Our principal position that I'll leave the court with is that these are issues that need to be developed on a factual record, that the court's foxy lady's opinion stands for the proposition that the city has to present facts to support its justification. That's when there's a secondary effects justification for exotic dancing establishments behind closed doors, not on the public street. Well, our contention is that the same rule applies, that the First Amendment requires this justification of presenting facts. If the justification is, in fact, secondary effects, that's not the justification the city is offering. That's the strict holding of the case. We are contending that it can be extended further, that the city doesn't get to just rely on They're asking us, asking to rely on common sense. And they're asking that the plaintiff be held to a higher burden of explaining why these justifications, which the city is the one who has to come forward with, are insufficient. And it's impossible for the plaintiff to negate those. The best example is that we didn't see the city's interpretation of the municipal ordinance until the brief on appeal. And in the district court, there's no possible way that we could have anticipated this new interpretation that wasn't even presented to us until we were here on the appeal. Thank you. Thank you, Mr. Flaxman. Mr. Breyer.  This court should affirm the judgment of the district court for two reasons I'd like to address. Before you start, forgive me, but I want to ask you about the extent of her pleading burden. Because I'm not sure why you think Ms. Tagami bears the burden not only of alleging facts sufficient to show that she engaged in expressive conduct, for example, but also to show that she can overcome the city's defenses. In other words, if the city bears the burden of articulating a legitimate justification for the ordinance, why must she anticipate what that justification might be and then allege facts that are sufficient to overcome it? I mean, isn't that putting the cart before the horse here? I don't believe so, Your Honor, because as set out under Rule 8, under Twombly and Iqbal, both, a plaintiff has a burden of establishing that a case of pleading, and we're not trying to ask for a heightened standard such as was in Leatherman, just a plain, simple statement of facts as to why a case is properly in federal court, why Ms. Tagami or any other plaintiff has a claim for relief and the elements of O'Brien are part of that claim. That's the rationale the city is going to articulate as a justification for its ordinance. Sorry, Your Honor, I could not hear part of your question. I apologize. How can she know in advance what specific rationale the city will decide to articulate to justify the ordinance? How can she know this? Well, that would be established by the Supreme Court's decision in Barnes. In Barnes, the Supreme Court observed that it was impossible on evidence to determine what the state of Indiana is, what the justification for the public nudity ordinance at issue there was, but said it could nevertheless be resolved on the basis of historical fact, the common tools of interpreting statutory purpose, the language of the statute and history. And the court said this is justified by a government's interest in morality and public order. There's nothing difficult at all to anticipate a justification that the United States Supreme Court has recognized has existed since before this country was founded. Tagami chose not to come forward with facts of that. And given that there is an established rationale that has been accepted and accepted to, that the court has accepted as a ground to uphold a public nudity ordinance, Tagami, it's no high burden. It's nothing beyond what Rule 8 would expect. It's nothing beyond the basic statement of a claim. Well, let me just say this and I'll let it go. But under the usual rules of pleading, she doesn't have to respond to a defense that has not yet been asserted by the city. Well, that's true of affirmative defenses. We do not contest that in the slightest. But the O'Brien, these elements are part of a First Amendment claim. And even in the cases Tagami cites, those cases note that an individual who's coming forward asking to change the status quo has an obligation to come forward with, to plead facts showing that the status quo needs to be changed. And we're not asking a lot. We're just asking for a reason up front for notice, just basic notice, not a painfully detailed statement. Just some fact showing why Tagami believes that either the city's ordinance is particularly unique, that it doesn't match up with the statute at issue in Barnes, for instance, or any of the other such statute or ordinances, or that she believes something has changed. We're not asking for a lot. And we want to make clear that we're not trying to impose a heightened burden. Just some statement of fact. Well, your personal challenge, unless someone else has something they would prefer you to go forward on. But my question is, why is this a factual issue at all, given the state of the case law? Ordinances of this type and laws of this type have been routinely upheld as a legal matter. And with that legal pedigree, it seems to me it's not a factual question at all. We would actually agree, Your Honor. We addressed the pleading issue because Tagami was coming forward with what seemed like an extraordinary request that the city be required to respond to a motion to dismiss with evidence, specifically requiring evidence be brought forward. It's not even clear how that would be done. But we would believe that this case could be resolved without even touching on that issue. Because, as you note, there is a long pedigree of case law, both in the First Amendment context and in the equal protection context, rejecting the exact kind of challenge Tagami brings here. Starting with the First Amendment challenge, Barnes explicitly accepted that a law against public nudity advances the government's interests in morality, public order, avoiding unwilling viewership of public nudity. Right, and where that's the justification, there is no need for evidence. The court has sanctioned it as a valid exercise of the police power, notwithstanding the First Amendment. Correct, and we believe that would end the case as well as the fact, without touching on evidentiary questions, as well as with the fact that, as this court recognized in Foxy Ladies, as was recognized in City of Erie by the Supreme Court, as has been recognized in numerous cases, that nudity is not inherently expressive. And there's just no need to go into the O'Brien test at all, absent inherent expressiveness. It's not clear that Tagami is trying to claim that public nudity is inherently expressive. I apologize, it's not clear from that. I don't believe she is, but even if she were, that's been so thoroughly rejected that this court could simply rely on the case law to reject that. And that would be the end of the First Amendment claim right there. The mere fact that a protest is accompanying that conduct, that argument runs headlong into O'Brien itself. That was the observation the Supreme Court made in Barnes, that there was a protest going on around it, but that didn't change things. That doesn't make non-inherently expressive conduct into inherently expressive conduct. And Rumsfeld followed up on that, rejecting the Fehr's argument that the larger nationwide protest against military recruiters was inherently expressive, because they were in the midst of a protest. Well, help me with this then. Why was her conduct during the protest not plausibly expressive conduct? The conduct was part of a Goatless Day protest. Her press were painted, presumably, in part to call attention to them. We can readily conceive of facts like signs, banners, chants, singing, that should make clear to observers what the message was. So what more would she need to allege on this point? Your Honor, it's not a question of alleging more. That question leads directly into Rumsfeld, which made clear that accompanying conduct with speech, accompanying conduct with a protest in that case, even, is not enough, because the conduct itself, the city isn't, the conduct itself is all that's being regulated. The city isn't trying to regulate protests, and as Tagami concedes in her opening statement, she is not coming forward with evidence that the city is disfavoring protests. There's no allegation here of that at all. Look, if we take your view, Rumsfeld, and ignore speech elements like signs accompanying the conduct, then many forms of classic protest activity, including marches, would be unprotected, would they not? I do not believe that it's true, Your Honor. Under Hurley, I believe marches and parades, Hurley concluded that parades have such a long history of use as a matter of expressing messages of some kind. It doesn't have to be a particular message, but they've long been used for that purpose, that a parade, a march, I don't believe there's any difference of First Amendment import between the two, would be protected. But just surrounding conduct, undisputedly conduct, the city merely restricts public nudity. There's no requirement of any kind other than that, that you not be nude in public. Merely holding up a sign or explaining what you're doing, as Rumsfeld explained, not only doesn't transform conduct into inherently expressive conduct, it's strong evidence that the conduct itself was not inherently expressive, because it needed to be explained. And that's true of nudity. Well, but you said we should ignore what protesters are saying, what their signs and banners say, did it? That's, I believe that could be one interpretation of Rumsfeld, that the speech doesn't change the conduct. It doesn't change the conduct. That it's whether the conduct itself has a meaning that transcends those, you know, that goes beyond just that moment. It's not those immediate circumstances. Otherwise, everything could be, every bit of conduct, as the court pointed out, the tax code, for instance, could be turned into a First Amendment issue by a person saying, me and my friends, we don't like the tax code, we're going to protest it. Now you have to decide whether the tax code meets all the O'Brien factors, and that's just simply not. It just can't be reconciled with Rumsfeld. And if there is going to be exception, with respect, it's for the Supreme Court to draw the exception. I believe Rumsfeld eliminates the surrounding speech argument that Tagami tries to raise here. Turning to the equal protection claim, we would also argue that, as with the First Amendment claim, there's no need for evidentiary findings. Again, as Your Honor observed, there's a long pedigree. As one case observed, it's equal protection challenges to public nudity ordinances on this ground have been universally, that's the language of the court, universally rejected. And we cite numerous cases in our... Explain how this is not a sex-based classification. Both men and women have breasts. These are, in fact, erogenous zones for both sexes, and they are also intimate areas for both sexes. Ms. Tagami has made no allegation that men's breasts are similarly situated to women's breasts. And as the cases have, you know, we cite the Buchanan case, we cite the Sachs case, Eccle, a number of cases have recognized that there are legitimate, recognizable differences between male breasts and female breasts, that the nature of breastfeeding and... At one time, it was considered indecent for men to expose their breasts in public. And municipalities had ordinances that prohibited such exposure. Beginning in the 1930s, however, attitudes changed. Prohibitions fell away. So it hasn't always been true that male and female breasts were perceived differently. And at least to breastfeeding mothers, there's been some recent change in public attitude toward the exposed female breasts. So why, then, is her equal protection claim rape ripe for resolution on the complaint alone? The ordinance plainly treats men and women differently in this regard. With respect, Your Honor, it does not treat men... Sorry, you cut out for that entire statement. Shouldn't we have a developed record? No, Your Honor. There's no need for a developed record on this point because, first, there isn't differential treatment. If the city had come forth and enacted an ordinance that said simply all individuals must cover their intimate erogenous areas, it would apply the same way. A number of states in their criminal codes even have done exactly that. Ohio's criminal code, for instance, specifically addresses intimate areas and lists essentially the same elements, the same body parts the city has, including specifically the female breast. That's not a differential rule. That's just a... It was a different way of phrasing, but that turns into a matter of semantics. And, second, as we note, a number of cases, and we believe it's a direct result from Barnes, have recognized that such laws advance an important governmental interest, and that is settled law in this nation in numerous courts. The Fourth Circuit, for instance, Ms. Tagami tries to distinguish cases from other circuits and say that they're addressing different issues. The Fourth Circuit's decision in Biasic was an individual attempting to... a woman attempting to topless sunbathe in a state park. A federal regulation incorporated a local ordinance that is virtually identical to the city's, and the Fourth Circuit held that that was an easy equal protection claim to resolve because that regulation advanced a substantial government interest, even if it were considered discriminatory in some way. And we believe... Well, we know the customs and mores change over time, and isn't the prudent thing to do to insist that the record be developed rather than to just assume that nothing has changed in how the female breast is perceived? Ms. Tagami has come forward with no allegations to indicate that these perceptions have changed on a level that would make any constitutional significance. In fact, the district court dismissed this claim on that ground, that she offered no well-founded factual allegations on these broad allegations she hoped to make. I see I'm at the end of my time. If there are no further questions, I will rest on our briefs and respectfully request that you affirm the judgment of the district court. Thank you. Thank you, counsel. Anything further, Mr. Flaxman? The city has relied heavily on the Rumsfeld case, and I believe, Senator, that it worked some change in the law, but our position is that Rumsfeld really just applied Spence to say when is conduct having an expressive element, and that's when it has an intent to communicate a message and when an observer would know that a message is being communicated. And our contention is that based on the pleadings that Ms. Tagami has put forward, she met that standard, and for the same reason that the court has applied First Amendment protection to nude dancing and also to nudity as part of film or theatrical performance, just the mere presence of nudity here doesn't take us out of the First Amendment. You know, we pointed to this court statement in the Brandt case that parading in public wearing no clothing at all, depending on the circumstances, can convey a political message. And the point really is that this is a case under the First Amendment about a protest, and it's a case about expressing views in the way that Ms. Tagami wanted to express those views, that there's this case, the Schacht case, about wearing a military uniform where the government's I don't see how that gets you away from O'Brien. That's the quintessential use of a forbidden act to express a protest. And in that case the court held that the government could not O'Brien lost. The citizens, the community for creative nonviolence lost the Sleeping in the Park case. Well, and the Sleeping in the Park case I think has a problem about whether it's expression. I'm talking about the Schacht case. Justices didn't doubt that it was expression. It's just that it was subject to regulation that was neutral with respect to expression. That, as I understand it, is the argument here. This regulation is neutral with respect to expression. That's what led me to ask effectively whether your theory shouldn't be differential enforcement, that the law is enforced when expression is ongoing and not enforced otherwise. That would really be a traditional First Amendment claim. Well, and we did talk about that before, and I put forward our position of how that is raised. What I will say about O'Brien is there's a separate interest in protecting the parks and in order and applying this. And here there's this conclusory use of public order and morality. But the Supreme Court didn't require any proof about the interest in protecting the parks. I mean, I think a lot of cases that we see from the Supreme Court. It said it was enough that this was a content-neutral regulation. It applied whether somebody wanted to protest by sleeping in the parks or just to sleep in the park. And I think the evidence in this case will show that it's applied differently based on protest and based on appearing at the beach. But you've already told me that my reading of your brief was correct, that there's no such argument in your brief. Well, and what I tried to tell you after that is that I believe that argument is within our argument about the contemporary fashions, and I believe that's the same thing about lack of enforcement. It's not the same thing. Somebody wearing a deeply cut gown at the Lyric Opera is not engaged in protest. And the law is not enforced against her. That would set up an argument that the law is enforced preferentially, if not only, when somebody is protesting. And that's why I say I was so puzzled that you didn't make this argument. Well, if we have a chance under the ban, we certainly will. The case is what it is. Thank you, Mr. Flaxman. The case is taken under advisement.